# American Radiator & Standard Sanitary Corporation v. Kellar's Adm'x et al.

February 21, 1950.

B. H. Farnsley, Judge.

Selligman & Greenebaum for appellant.

Charles Leibson and James Graves for appellees.

JUDGE CAMMACK—Affirming.

The appellant is seeking a reversal of a compensation award in favor of the dependent mother of Ephraim Kellar. Kellar was an employee of the appellant from 1912 until shortly before his death in the fall of 1944. It is urged that the judgment should be reversed because (1) the sole dependency of the mother was not shown; (2) certain bulletins on the subject of silicosis were erroneously admitted in evidence; (3) silicosis was not shown to be the cause of Kellar's death; (4) the claim is barred by limitations because there was no injurious exposure to silicosis within two years before Kellar's death; and (5) the Board should have applied the Ditty rule.

Kellar was a blower in one of the Company's Smallware Sandblast Departments from 1912 to 1939, with the exception of one year when he was in the Army. From March 1939 to October 1939, and from November 1939 to June 1944 he was employed as a janitor. It is stipulated that at the time of his transfer to the Janitors' Department Kellar was suffering from silicosis. Kellar died in October 1944 from pulmonary tuberculosis, with silicosis being the contributing cause.

The appellant contends that, since Kellar was married, it was incumbent upon the claimant to show he had been divorced or that his wife had abandoned him. Kellar and his wife were separated sometime prior to 1937, at which time his mother began living with him. His mother said she did not know the date of separation nor the place where the wife was living. Other testimony showed that Kellar's wife was in Chicago when last heard from. A niece testified she knew Mrs. Kellar had instituted proceedings for divorce. We think the Board properly found that Kellar's mother was his sole dependent.

Two Health Department publications on silicosis were admitted in evidence. The record shows clearly, however, that the Board's finding was based upon the

testimony of W. W. Stalker, an industrial hygienist in the Kentucky State Department of Health. Mr. Stalker has given much study in recent years to the subject of silicosis. We fail to see, however, how it can be contended seriously that the introduction of the bulletins, even if erroneous, was prejudicial.

We are not impressed with the contention that it was not shown silicosis caused Kellar's death. The death certificate showed that he died from tuberculosis, with silicosis as a contributing factor. Furthermore, it is stipulated that Kellar was a silicotic when transferred from the Sandblast Department. Here again, as in the case of American Radiator & Standard Sanitary Corporation v. Crawford, 310 Ky. 711, 221 S. W. 2d 684, the Company apparently was attempting to avoid a compensation claim of a silicotic by transferring him to work where the exposure to silicosis was less hazardous.

In this case, as in the Crawford case, it is argued strenuously that there was no injurious exposure to silicosis within two years of the termination of the employment. See also the case of American Radiator & Standard Sanitary Corporation v. Brentlinger, 311 Ky. 500, 224 S. W. 2d 912. Both Crawford and Kellar were employees in the Janitors' Department and both worked in the dressing rooms in Building 11. There is some conflict in the testimony as to the places where Kellar worked as a janitor. One of the former janitors stated that, when he quit in May 1942, Kellar was still working in Building 11. Another janitor said Kellar worked in Building 11 until six or eight months before he quit. On the other hand, the appellant's evidence showed that Kellar was transferred to the Brass building in 1941, and remained there until April 1943, when he was transferred to the "SS" club rooms, where he worked until he quit in June 1943. The claimant made no effort to show that silicosis sand could be contacted in injurious quantities in the Brass building or in the "SS" club rooms. As in the Crawford case, the appellant's proof showed that to be injurious, an exposure must be 15 million particles of silica per cubic foot of air of a size of not more than 10 microns per particle. Mr. Stalker again testified that a silicosis content of 5 million particles per cubic foot of air for a sustained period constituted an injurious exposure. We think there was

sufficient evidence of probative value to avoid the appellant's plea of limitations and to support the Board's finding.

Lastly, it is contended that any award made in favor of the claimant should be credited by the wages received by Kellar while he was employed as a janitor, under the Ditty rule. This contention is groundless because that rule has been applied only in instances where wages were earned after there had been an award for compensation. The same contention was disregarded in the Crawford case.

Judgment affirmed.